UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PAOLA D. VERA, ESQ.,

                Plaintiff,

      -against-

THE DONADO LAW FIRM, VALMIRO L.
DONADO, ESQ., MAURICIO VILLAMARIN,
and ELIZABETH MARTINEZ,

                Defendants.

17cv03123 (LGS) (DF)

**CORRECTED REPORT
AND RECOMMENDATION[1]**

---

**TO THE HONORABLE LORNA G. SCHOFIELD, U.S.D.J.:**

In this employment action, *pro se* plaintiff Paola D. Vera, Esq. ("Plaintiff"), herself a

lawyer, has asserted claims against her former employer, defendant The Donado Law Firm (the

"Donado Firm") for gender discrimination, in violation of Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and for disability discrimination, in

violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA").  In

addition, Plaintiff has asserted pendent state- and local-law claims against the Donado Firm and

individual defendants Valmiro L. Donado, Esq. ("Donado"), Mauricio Villamarin

("Villamarin"), and Elizabeth Martinez ("Martinez") (all, collectively, "Defendants")[2] for

gender, disability, and perceived-disability discrimination, in violation of both the New York

State Human Rights Law, N.Y. Exec. L. §§ 290, 296, *et seq.* (the "NYSHRL"), and the New

---

[1] This Corrected Report and Recommendation corrects certain typographical errors
contained in the original Report and Recommendation, dated June 18, 2019, and does not affect
its substantive conclusions.

[2] In her Complaint, Plaintiff also named American Legal Counsels PLLC Law Firm
("ALC") as a defendant, but the Court has since dismissed Plaintiff's claims against ALC.
(Dkt. 28.)

York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, 8-107, *et seq.* (the "NYCHRL"), and for breach of contract, based on the principles articulated in *Wiedner v. Skala*, 80 N.Y.2d 628 (1992).

The case is currently before this Court for the purpose of conducting a damages inquest and to report and recommend as to the appropriate amount of damages to be awarded to Plaintiff from defendant Villamarin, following the entry of a default judgment against him.  For the reasons set forth below, I respectfully recommend that, despite Villamarin's default, Plaintiff not be awarded any damages on her claims against him, as the Complaint lacks well-pleaded allegations sufficient to support those claims.

## BACKGROUND

### A.    Factual Background

The facts included herein are taken from the Complaint, as well as, where indicated, the Declaration that Plaintiff has submitted in connection with this damages inquest.  (*See* Declaration of Paola D. Vera in Support of Her Calculation of Damages, dated May 1, 2018 ("Vera Decl.") (Dkt. 43).)

According to Plaintiff, she was hired as an associate attorney at the Donado Firm in May of 2013, with an initial salary of $60,000 per year.  (Complaint, dated Apr. 27, 2017 ("Compl.") (Dkt. 1) ¶ 15; Vera Decl. ¶ 2.)  In that position, Plaintiff claims to have "made court appearances on behalf of the firm, attended mediations, advised clients, and drafted pleadings."  (Compl. ¶ 15; Vera Decl. ¶ 2.)  She also claims that, "[a]s she was the only attorney at the firm who was admitted to practice in New Jersey, she was responsible for its entire caseload in that state in addition to the cases she managed in New York."  (Compl. ¶ 15; *see also* Vera Decl. ¶ 2.)  In March of 2014, Plaintiff's annual salary was raised to $70,000.  (Compl. ¶ 16; Vera Decl. ¶ 3.)

At some point, Plaintiff informed the Donado Firm that she would be taking maternity leave.  (Compl. ¶ 23; Vera Decl. ¶ 6.)  When she attempted on several occasions to discuss the firm's maternity leave policy with defendant Donado, presumably the principal member of the firm, he allegedly ignored each attempt (Compl. ¶ 24; Vera Decl. ¶ 7) and told her "not to worry" (Compl. ¶ 24).  Despite this assurance, Plaintiff contends that, on April 20, 2014, "while at the hospital to give birth," she was informed that the Donado Firm was not going to pay for her maternity leave.  (*Id.* ¶ 25; Vera Decl. ¶ 8.)  In addition, during the spring of 2014, the Donado Firm hired at least three new attorneys – two in February of 2014, and a third in June of 2014. (Compl. ¶ 26.)  Although Plaintiff provides no specific date, she also alleges that, "[s]oon after [her] maternity leave," the firm hired a male associate attorney named Ari Mor ("Mor").  (*Id.* ¶ 27.)  Plaintiff claims that, when she returned from maternity leave, she was treated differently by the Donado Firm's management and its staff, including by being relegated to a laptop computer in a small cubicle, rather than her former office.  (*Id.* ¶ 28.)  She also claims that she "noticed that her colleagues now ignored her opinions and direction and favored Mor's."  (*Id.* ¶ 29.)

In the summer of 2014, a staff meeting was held where concerns were raised about the Donado Firm's "erroneous ways of practice,"[3] and where she personally raised "potential ethical concerns."  (*Id.* ¶ 30.)  According to the Complaint, "[n]one of the suggestions to rectify the

---

[3] Plaintiff alleges that, in December of 2013, she learned that the Donado Firm, along with an entity called "American Hope Group," were the subject of numerous lawsuits alleging fraud.  (*Id.* ¶ 17.)  Plaintiff voiced concerns about these lawsuits and other ethical violations that she believed the Donado Firm was committing to defendants Donado and Villamarin, including by sending them an internet link to an article regarding one of the lawsuits.  (*Id.* ¶¶ 18, 19.)  In mid-2014, defendants Villamarin and Martinez (the Donado Firm's chief financial officer) closed American Hope Group, and created a new law firm – the former defendant ALC – with Martinez serving as ALC's president.  (*Id.* ¶ 20.)

concerns were implemented other than having [] new software added to only [] Mor's computer." (*Id.*)  Further, Plaintiff claims that, after the meeting, she was assigned "less and less work," and that the firm "stopped reimbursing [her] for gas expenses." (*Id.* ¶ 31.)

On October 2, 2014, Plaintiff was diagnosed with breast cancer.  (*Id.* ¶ 32.)  She advised Donado of the diagnosis, and Donado allegedly assured her that "her job was secure." (*Id.* ¶ 33.) She underwent chemotherapy, but continued to work regularly.  (*Id.* ¶¶ 34, 36.)

In or around late October or early November of 2014, the Donado Firm hired another male attorney, licensed in New Jersey, the territory for which Plaintiff had previously had exclusive responsibility.  (*Id.* ¶ 37.)  Then, on November 14, 2014, Plaintiff found that her computer was locked.  (*Id.* ¶ 38.)  She tried to get in touch with Donado, but he "advised that he was not available to speak with her." (*Id.*)  Plaintiff claims that, on November 20, 2014, Donado terminated her employment without explanation, informing her only that "he was supposed to fire her weeks ago." (*Id.* ¶¶ 40, 42.)  On December 2, 2014, Plaintiff received a letter from the Donado Firm memorializing her employment termination; the letter cited changes to the business and to the firm's volume of work as the purported reasons for her termination.  (*Id.* ¶ 44.)

As a general matter, Plaintiff suggests in her Complaint that the Donado Firm had a history of engaging in unethical conduct.  (*See supra*, at n.3.)  While she does not explain the nature of the "ethical violations" she references in her pleading (*see* Compl. ¶ 19), she does allege that the firm's unethical behavior extended to its employment practices.  She asserts, for example, that, in late October and early November of 2014, "Martinez fired an employee and then told him that he needed to sign a resignation letter to avoid 'problems' with his immigration application." (*Id.* ¶ 21.)  She also alleges, upon information and belief, that "a pregnant employee notified the firm that she would need to take maternity leave earlier than expected"

and that, "[i]n response, the [Donado] Firm fired her and then forced her to sign a resignation letter." (*Id.* ¶ 22.)

As to the particular role that Villamarin (the subject of this inquest) played in any adverse actions taken against anyone at the Donado Firm – and specifically against Plaintiff – the Complaint is effectively silent. Plaintiff does not specifically allege any formal affiliation between Villamarin and the Donado Firm. She does not allege he was a partner (or even an attorney), that he served in any management role at the firm, that he supervised her work, or that he participated in any personnel decisions affecting her employment. Although, as noted above, Plaintiff pleads that Martinez and Villamarin created ALC (*see supra*, at n.3), she does not describe Villamarin's position with ALC or the nature of any business relationships that may have existed between or among American Hope Group, ALC, and the Donado Firm.

**B.**   **Procedural History**

After receiving a Right-To-Sue letter from the Equal Employment Opportunity Commission, Plaintiff filed her Complaint in this action on April 28, 2017, asserting claims against the Donado Firm, Donado, Villamarin, Martinez, and ALC for gender discrimination under Title VII, disability discrimination under the ADA, gender and disability discrimination under the NYSHRL and NYCHRL, and breach of contract. (*See* Compl.)

While it appears Plaintiff eventually effectuated service on all of the named defendants (*see* Dkts. 9, 10, 14, 25, 26), the only defendants who ever appeared in the case were Villamarin, who filed a *pro se* Answer to the Complaint on May 23, 2017 (*see* Answer to Complaint, dated May 21, 2017 ("Villamarin Ans.") (Dkt. 4)),[4] and ALC, which, on June 19, 2017, filed a motion

---

[4] In his Answer, Villamarin mostly denied Plaintiff's factual allegations or stated that he lacked sufficient information to admit or deny them. (*See generally* Villamarin Ans.) In addition, he stated, as defenses, that he "was the CEO of American Hope Group and ha[d] never

to dismiss the claims against it under Rule 12(b)(6) of the Federal Rules of Civil Procedure (*see* Dkt. 7). As noted above (*see supra*, at n.2), the Court granted ALC's motion to dismiss, finding that, even drawing all inferences in Plaintiff's favor, she had not plausibly alleged any wrongdoing on ALC's part (*see* Dkt. 28).

As for Villamarin, while he appeared telephonically for an initial pretrial conference held by the Honorable Lorna G. Schofield on June 30, 2017, this Court – to which the matter was then referred for general pretrial supervision (Dkt. 31) – was unable to secure Villamarin's participation in any follow-up conference, despite multiple scheduling attempts and formal warnings. As a result of Villamarin's repeated failures to appear before this Court or comply with Court orders, this Court recommended to Judge Schofield, on December 21, 2017, that a default judgment be entered against him. (*See* Dkt. 37 (chronicling Villamarin's history of non-compliance, including his failure to respond to an order to show cause).) By Order dated January 5, 2018, Judge Schofield adopted this Court's recommendation and proceeded to enter a default judgment against Villamarin (Dkt. 38) and to refer the matter to this Court for a damages inquest (Dkt. 39).

On January 1, 2018, this Court issued a Scheduling Order requiring Plaintiff to serve and file Proposed Findings of Fact and Conclusions of Law concerning damages by February 15, 2018. (Dkt. 40.) After missing the February 15 deadline, Plaintiff requested and received an extension of time to make her submission. (Dkts. 41, 42.) On May 2, 2018, Plaintiff filed a Declaration in support of her proffered damages calculations. (*See* Vera Decl.)

---

been of the Donado Law Firm" (*id.* (First Defense)); that "American Hope Group signed an agreement with [the Donado Firm], only to handle the services of back office and marketing to [the Donado Firm]" (*id.* (Second Defense)); that he "is not a lawyer and he was not a manager or owner of [the Donado Firm] . . ." (*id.* (Third Defense)); and that Plaintiff "never worked for the American Hope Group" (*id.* (Fourth Defense)).

In her Declaration, Plaintiff generally reiterates the allegations of the Complaint regarding her communications with Donado and the acts of claimed discrimination and wrongful termination by Donado and the Donado Firm (*see id.* ¶¶ 2-25), but she adds nothing about the conduct of Villamarin (*see generally id.*).[5]  As to her damages, Plaintiff states that, after the Donado Firm terminated her employment, she was "out of work from November of 2014 through March 2016" (*id.* ¶ 27), and that, when she finally found new employment, it was at a (presumably annual) salary of $66,500, which was less than the salary of $70,000 she had earned at the Donado Firm (*id.* ¶¶ 26, 28).  She also asserts that, in 2015, she earned a total income of $37,601 (including unemployment benefits in the amount of $14,478) and that she was forced to cash out her retirement fund in the amount of $8,525.  (*Id.* ¶¶ 29-30; *see also id.*, Ex. A (Plaintiff's 2015 tax return).)  Without further explanation, Plaintiff then contends that she is entitled to damages "in the amount of $100,000 for the loss of wages and for damages caused due to the discrimination [she] was subjected to."  (*Id.* ¶ 31.)

Although this Court cautioned Villamarin that his failure to respond to Plaintiff's inquest submission by June 1, 2018, would result in this Court's issuance of a recommendation based on Plaintiff's submission alone (*see* Dkt. 42), Villamarin filed no response by that date or at any time thereafter.

---

[5] In her Declaration, Plaintiff states:  "I am the Plaintiff in this action and as such submit this declaration in support of my application for damages against defaulting defendants The Donado Law Firm, Valmiro L. Donado, Esq., Mauricio Villamarin and Elizabeth Martinez (collectively Defendants)."  (*Id.* ¶ 1.)  Despite this language, this Court must consider Plaintiff's Declaration only in connection with her claims for damages against Villamarin, given that, to date, Villamarin is the only defendant as to whom Plaintiff has obtained a default.

**DISCUSSION**

I.      **APPLICABLE LEGAL STANDARDS**

     A.      **Default Judgment**

Where a defendant has defaulted, the court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor, . . . but it is also required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) ("[A] district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action . . . ." (citation omitted)).  In other words, because a defendant's default only establishes its liability based on the *well-pleaded* allegations of the complaint, the court must still scrutinize the plaintiff's pleading and find the claims sufficiently pleaded.  *See Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 313 (S.D.N.Y. 2014) (stating that, "since the allegations in the complaint must be 'well-pleaded,' we are required to examine whether those factual allegations, if deemed true, establish liability" (citing *Finkel*, 577 F.3d at 84)); *see also Centra Developers Ltd. v. The Jewish Press Inc.*, No. 16-CV-6737 (WFK) (LB), 2018 WL 1445574, at *1 (E.D.N.Y. Mar. 23, 2018) (finding, despite defendant's default, that plaintiff was not entitled to recover damages on pleaded claims that failed as a matter of law); *Greathouse v. JHS Sec. Inc.*, No. 11cv7845 (PAE), 2012 WL 5185591, at *5 (S.D.N.Y. Oct. 19, 2012) (finding, after a damages inquest upon the defendant's default, that the plaintiff was not entitled to damages on an inadequately pleaded FLSA retaliation claim), *vacated and remanded on other grounds*, 784 F.3d 105 (2d Cir. 2015).

In addition, although complaints filed by *pro se* plaintiffs are generally held to a less stringent standard and construed liberally by the courts, *see Branham v. Meachum*, 77 F.3d 626, 628-29 (2d Cir. 1996), where the *pro se* plaintiff is also a lawyer, the rationale for liberally interpreting the pleadings does not apply, *see Cohen v. Capers*, No. 16cv6090 (PKC) (AJP), 2017 WL 2455132, at *3 (S.D.N.Y. June 6, 2017); *Brophy v. Chao*, No. 17cv9527 (CS), 2019 WL 498251, at *4 n.2 (S.D.N.Y. Feb. 7, 2019); *Sheldon v. Khanal*, 396 F. App'x 737, 739 (2d Cir. 2010) (summary order) (citing *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001)).

### B.   **Damages**

If the court determines that a defendant is liable based on the well-pleaded allegations of the plaintiff's complaint, the court must then determine whether the plaintiff's damages have been established with "reasonable certainty."  *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir.1999); *RGI Brands LLC v. Cognac Brisset-Aurige, S.a.r.l.*, No. 12cv1369, 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013).  Where a defaulting defendant has not made any submission, the court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs alone.  *See, e.g.*, *Garden City Boxing Club, Inc. v. Hernandez*, No. 04cv2081 (LAP) (DF), 2008 WL 4974583, at *2, 4-5 (S.D.N.Y. Nov. 24, 2008) (determining the adequacy of plaintiff's damages claim based solely on its submitted proofs where defendant neither responded to plaintiff's submissions with respect to its claimed damages nor requested a hearing).

## II.   PLAINTIFF'S PLEADED ALLEGATIONS
##   ARE PATENTLY INSUFFICIENT TO SUPPORT
##   <u>ANY OF HER CLAIMS AGAINST VILLAMARIN.</u>

The Court must first determine whether, with respect to each of her asserted claims, Plaintiff's allegations in the Complaint are sufficiently "well-pleaded" to establish Villamarin's liability. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). Only if the allegations are sufficient to state a claim against Villamarin should the Court then proceed to determine the appropriate amount of damages to be awarded. *See Centra Developers*, 2018 WL 1445574, at *1; *Greathouse*, 2012 WL 5185591, at *5. Upon review of the Complaint, it is apparent to this Court that none of Plaintiff's claims against Villamarin is supported by factual allegations that are even remotely adequate to establish liability.

### A.   <u>Plaintiff's Discrimination Claims</u>

Six of Plaintiff's seven pleaded claims in this action are employment-discrimination claims. Her first two claims – Plaintiff's only federal claims – are brought under Title VII and the ADA, respectively, and are explicitly pleaded solely against the Donado Firm. (*See* Compl. (First and Second Causes of Action).) This Court thus need not address them here, as this inquest relates only to the damages to which Plaintiff may be entitled on her claims against Villamarin. Nonetheless, as discussed briefly below, this Court notes that, even if these two claims were somehow read to have been asserted against Villamarin (or if Plaintiff were to seek leave to amend the claims so as to add Villamarin), they could not stand against him, as the federal anti-discrimination statutes do not provide for individual liability. Plaintiff's third and fourth claims plead discrimination based on disability (or perceived disability) and gender, in violation of the NYSHRL (*see id.* (Third and Fourth Causes of Action)), and her fifth and sixth claims make parallel assertions under the NYCHRL (*see id.* (Fifth and Sixth Causes of Action)).

These state- and local-law claims *do* appear to have been asserted against Villamarin, but, while the cited laws generally allow for individual liability, Plaintiff's allegations are inadequate to bring Villamarin within their scope.

### 1.    Plaintiff's Federal Claims

Plaintiff appears to be alleging that she was discriminated against in the terms and conditions of her employment and ultimately fired because of her pregnancy and/or her breast-cancer diagnosis and treatment.  Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . .  sex," 42 U.S.C. § 2000e-2(a)(1), and this prohibition extends to discrimination "because of or on the basis of pregnancy," *id.* § 2000e(k); *see also Young v. UPS, Inc.*, 135 S. Ct. 1338, 1343 (2015) ("The Pregnancy Discrimination Act makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy."). Separately, the ADA makes it unlawful for an employer to engage in discriminatory employment practices because of an employee's disability, *see* 42 U.S.C. § 12101, and "[c]ancer will 'virtually always' be a qualifying disability" under the statute, *Katz v. Adecco USA, Inc.*, 845 F. Supp. 2d 539, 548 (S.D.N.Y. 2012) (citing 29 C.F.R. § 1630.2(j)(3)(ii)-(iii)); *see also* 42 U.S.C § 12102(1)-(2)(B).

As a threshold matter, both Title VII and the ADA generally cover only those employers that have 15 or more employees.  *See* 42 U.S.C. §§ 2000e(b), 12111(5)(A).  Further, to prevail on a claim brought under either statute, a plaintiff must establish that he or she was in an "employer-employee" relationship with the defendant.  *See Harris v. NYU Langone Med. Ctr.*, No. 12cv0454 (RA) (JLC), 2013 WL 3487032, at *11 (S.D.N.Y. July 9, 2013) ("[T]he existence

of an employer-employee relationship is a 'primary element' of all Title VII and ADA claims."

(citations omitted)), *report and recommendation modified on other grounds and adopted by* 2013

WL 5425336 (Sept. 27, 2013).  Most importantly, neither Title VII nor the ADA allows direct

suits against individual employees or partners of an employing entity, even those serving in a

supervisory capacity.  *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313-17 (2d Cir. 1995) (holding

that, as Congress clearly limited Title VII liability to that of employers with 15 or more

employees, Congress could also not have intended to permit liability against individual

employees) *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742

(1998); *Yaba v. Cadwalader, Wickersham & Taft*, 896 F. Supp. 352, 353 (S.D.N.Y. 1995)

(holding that individual liability, including that of a partner of the defendant law firm, "is

inconsistent with the language and remedial framework of Title VII"); *Spiegel v. Schulmann*, 604

F.3d 72, 79-80 (2d Cir. 2010) (extending Title VII individual liability analysis to ADA case).[6]

Only where an individual is the owner of the employing entity, and exercises such dominion and

control over that entity that he or she may be deemed its "alter ego," may personal liability be

found.  *See, e.g.*, *Magnotti v. Crossroads Healthcare Mgmt., LLC*, 126 F. Supp. 3d 301, 311-12

(E.D.N.Y. 2015) (noting, in ADA case, that "[t]o state a claim for individual liability under the

alter ego doctrine, a plaintiff must plead (1) that the [individual defendant] exercise[d] such

dominion and control . . . that the corporation had no separate will of its own; and (2) that the

---

[6] *See also Figueroa v. RSquared NY, Inc*., 89 F. Supp. 3d 484, 492-93 (E.D.N.Y. 2015)
(noting that Title VII does not impose individual liability and collecting cases); *Baldwin v.
New York City Dep't of Youth & Cmty. Dev.*, Nos. 11cv7744 (PGG), 12cv4114 (PGG),
2012 WL 13034914, at *2 (S.D.N.Y. Dec. 28, 2012) (noting that the ADA does not impose
individual liability and collecting cases); *Manswell v. Heavenly Miracle Acad. Servs., Inc.*,
No. 14-CV-7114 (MKB) (SMG), 2017 WL 9487194, at *7 (E.D.N.Y. Aug. 23, 2017) (holding
that, while the defendant was a supervisor who had engaged in discriminatory conduct,
defendant was an individual and therefore could not be held liable).

domination and control was used to commit a fraud or wrong against the plaintiff which proximately caused [her] injuries" (internal quotation marks and citations omitted)).

While the Court could reasonably infer from Plaintiff's Complaint that the Donado Firm discriminated against her because of her pregnancy and/or her cancer diagnosis (*see generally* Compl. ¶¶ 15-45; *see also* Discussion, *infra*, at Section III), Plaintiff has not pleaded facts that could plausibly demonstrate Villamarin's liability for that discrimination under federal law.

The allegations set out in Plaintiff's Complaint, with regard to Villamarin, are extremely sparse.  In the body of her pleading, Plaintiff mentions Villamarin only four times.  First, presumably for jurisdictional purposes, Plaintiff alleges that Villamarin is a citizen of the state of New York.  (Compl. ¶ 6.)  Second, Plaintiff makes the boilerplate allegation that Villamarin and the other individual defendants are being sued in this action "as employers, aiders and abettors to the discriminatory act."  (*Id.* ¶ 9.)  Third, Plaintiff alleges that, in December 2013, while employed by the Donado Firm, she sent Donado and Villamarin an internet link about a lawsuit then pending against the Donado Firm and American Hope Group.  (*Id.* ¶ 18.)  Finally, Plaintiff asserts that, in mid-2014, Villamarin and Martinez "closed American Hope Group and created ALC."  (*Id.* ¶ 20.)

Not only has Plaintiff failed to plead that the Donado Firm, by which she claims she was employed as an associate attorney (*see id.* ¶ 15), had at least 15 employees, but wholly absent from the Complaint are any allegations regarding the nature of Villamarin's relationship to the Donado Firm.  While, in opposition to ALC's motion to dismiss, Plaintiff asserted that Villamarin, together with Martinez, created ALC "while working for the Donado Law Firm" (Affirmation in Opposition to Defendant's Motion To Dismiss, dated July 7, 2017 (Dkt. 19) ¶ 11), the Complaint is silent as to whether Villamarin was a member of the Donado Firm, an

attorney associated with the firm (or even an attorney at all), or whether he was employed by the firm in some administrative or other capacity.  The Complaint certainly does not allege that Villamarin was an owner of the firm who exercised such complete dominion or control over it that he could be considered its alter ego.[7]

Plaintiff has also pleaded no facts capable of showing that Villamarin, himself, was ever her "employer" in the sense that she was hired to work directly for him, in any capacity.  For that matter, Plaintiff has not pleaded that Villamarin personally had at least 15 employees, such that he could himself qualify as an "employer" under Title VII and the ADA.

For these reasons – even apart from the fact that Plaintiff has not actually named Villamarin in her Title VII or ADA claims – this Court finds that Plaintiff has pleaded no underlying factual allegations that could support a federal claim against him.[8]

---

[7] Plaintiff has also pleaded nothing to suggest that the Donado Firm and *ALC* (with which Villamarin was purportedly affiliated) constituted a single "integrated enterprise" with respect to her employment, *see Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000); that she was employed jointly by the Donado Firm and ALC, *see Lima v. Addeco*, 634 F. Supp. 2d 394, 400 (2009); that ALC was itself a covered employer under Title VII and the ADA; or that Villamarin was effectively ALC's alter ego.  In any event, in dismissing Plaintiff's claims against ALC, Judge Schofield found that Plaintiff failed to plead any plausible allegations of wrongdoing by ALC (*see* Dkt. 28), and, thus, even if Plaintiff had sufficiently pleaded that ALC was her employer and that Villamarin exercised dominion and control over ALC, no federal claim against Villamarin could stand based on his involvement with ALC.

[8] Although, in the absence of a viable federal claim against Villamarin, the Court has the discretion to retain supplemental jurisdiction over Plaintiff's state- and local-law claims against him, *see Losquadro v. FGH Realty Credit Corp.*, 959 F. Supp. 152, 160 (E.D.N.Y. 1997) (retaining supplemental jurisdiction over state-law claims where issues were closely tied to federal claims pending against remaining defendants), here, as discussed further below, Plaintiff's state- and local-law claims against Villamarin are also defective.

2.     **Plaintiff's Claims Under the NYSHRL**

The NYSHRL broadly prohibits discrimination by an employer on the basis of, *inter alia*,

sex (which has been held to include pregnancy) and disability (which, as with federal law, has

been found to include cancer).  *See* N.Y. Exec. L. § 296(1)(a) (stating that it is "an unlawful

discriminatory practice:  (a) [f]or an employer . . . because of an individual's . . . sex, [or]

disability, . . . to discharge from employment such individual or to discriminate against such

individual in compensation or in terms, conditions or privileges of employment"); *Phillips v.

City of New York*, 66 A.D.3d 170, 184 (1st Dep't 2009) (holding that breast cancer qualifies as a

disability under the NYSHRL); *Elaine W. v. Joint Diseases N. Gen. Hosp., Inc.*, 81 N.Y.2d 211,

216 (1993) (noting that the New York Court of Appeals has "consistently held that distinctions

based solely upon a woman's pregnant condition constitute sexual discrimination").  For

purposes of this statute, an "employer" is only required to have four or more employees.  *See*

N.Y. Exec. L. § 292(5).

Provided the "employer" definition is satisfied, the NYSHRL – unlike Title VII and the

ADA – allows, in certain circumstances, for suits to be maintained against an individual owner

or employee of the employing entity.  "As a general rule, individuals may be subject to liability

as employers if they have ownership interests in the [employer] or do more than carry out

personnel decisions of others."  *Matusick v. Erie County Water Auth.*, 757 F.3d 31, 53 (2d Cir.

2014) (internal quotation marks and citation omitted)); *see also Tomka*, 66 F.3d at 1317 (noting

that the New York Court of Appeals has "held that an employee is not individually subject to suit

under § 296 of the [NYSHRL] as an employer 'if he is not shown to have any ownership interest

or any power to do more than carry out personnel decisions made by others'" (quoting

*Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 542 (1984))).  Thus, a partner in a law firm – as a

person with an ownership interest – may be subject to liability under the NYSHRL.  *See Evans-Gadsden v. Bernstein Litowitz Berger & Grossman, LLP*, 332 F. Supp. 2d 592, 598 (S.D.N.Y. 2004).  A direct claim is also possible against a firm's employee, if he or she was a supervisor with direct operational control over the plaintiff's work conditions and the power to make relevant hiring and firing decisions.  *See Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012) ("Individual liability may lie under § 296(1)[,] but is limited to individuals with ownership interest or supervisors[] who[,] themselves, have the authority to hire and fire employees." (internal quotation marks and citations omitted)).

Separately, in addition to direct liability, the NYSHRL provides for individual aider-and-abettor liability.  *See* N.Y. Exec. L. § 296(6) ("It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article [including discrimination and retaliation], or to attempt to do so.").  On an aider-and-abettor claim, "[i]t is the employer's participation in the discriminatory practice which serves as the predicate for the imposition of liability on others for aiding and abetting," *Murphy v. ERA United Realty*, 251 A.D.2d 469, 472 (2d Dep't 1998), and thus a plaintiff "cannot prevail against [an individual defendant] . . . unless she can first establish the liability of [the employing entity]," *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999).  Moreover, in order for aider-and-abettor liability to be established, the defendant must be found to have "actually participated in the conduct giving rise to the claim of discrimination."  *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 687 (S.D.N.Y. 2012) (internal quotation marks and citation omitted); *see also Pellegrini v. Sovereign Hotels, Inc.*, 740 F. Supp. 2d 344, 356 (N.D.N.Y. 2010) (noting that aider-and-abettor liability under the NYSHRL may apply where the individual defendant

actually participated in the discriminatory conduct giving rise to the claim, including where the individual failed to take remedial action or to intervene in or investigate discriminatory conduct).

While Plaintiff has not set out in her Complaint the number of employees employed by the Donado Firm, the Court can discern from her allegations that the firm did employ at least four people during certain periods of Plaintiff's employment.  (*See* Compl. ¶ 26 (alleging that the "firm hired two new attorneys in February 2014," and hired "another new associate and a new paralegal" in June 2014).)  Further, as noted above, Plaintiff has pleaded sufficient facts to give rise to a reasonable inference that her termination by the Donado Firm was discriminatory.  Plaintiff has not pleaded, however, that Villamarin was himself a member of the firm or its employee, much less that he had the authority to hire and fire employees.

Even more critically, Plaintiff has not alleged that Villamarin participated, in any way, in any discriminatory conduct.  There are simply no allegations in the Complaint that Villamarin was involved in hiring any other (male) attorneys near or during the time of Plaintiff's maternity leave, in denying Plaintiff maternity-leave pay or benefits, in changing the terms and conditions of her employment when she returned from maternity leave, in locking her laptop, in forcing her to work in a cubicle, in assigning her less work, in denying her expense reimbursements, or in terminating her employment after she informed Donado of her cancer diagnosis.[9]  There are also no allegations that Villamarin was aware of either her diagnosis or the allegedly discriminatory conduct and was in a position to – but failed to – intervene or investigate that conduct, or to take remedial action.  Given the complete absence in Plaintiff's pleading of any factual predicate for

---

[9] In dismissing Plaintiff's claims against ALC, Judge Schofield similarly determined that Plaintiff had not pleaded that Villamarin took any wrongful acts against Plaintiff within the scope of any employment that he may have had with ALC.  (*See* Dkt. 28.)

either a sex- or disability-discrimination claim against Villamarin under the NYSHRL, this Court cannot find that Plaintiff is entitled to damages on either such claim.

### 3.  Plaintiff's Claims Under the NYCHRL

Under the NYCHRL, it is "an unlawful discriminatory practice" for "an employer or an employee or agent thereof, because of the actual or perceived . . . gender [or] disability . . . of any person, . . . to discharge from employment such person[] or . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment."  N.Y.C. Admin. Code § 8-107(1)(a).  As with the NYSHRL, an "employer" is defined under the NYCHRL as having four or more employees, *see* N.Y.C. Admin. Code § 8-102(b), but, under the NYCHRL, a supervisory or other employee may be held individually liable regardless of whether he or she was an owner or had the authority to make personnel decisions, *see Villar v. City of New York*, 135 F. Supp. 3d 105, 143 (S.D.N.Y. 2015) ("The NYCHRL . . . provides a broader basis for direct individual liability than the NYSHRL because it applies to employees regardless of ownership or decisionmaking power." (internal quotation marks and citation omitted)); *Zhang v. Jenzabar, Inc.*, No. 12-CV-2988 (RRM) (RER), 2015 WL 1475793, at *13 (E.D.N.Y. Mar. 30, 2015) (permitting plaintiff's discrimination claim under the NYCHRL to proceed against a defendant that was not her employer).

Moreover, as a substantive matter, "the NYCHRL is to be construed more broadly than its state and federal counterparts," *Rodriguez v. Verizon Telecom*, No. 13cv6969 (PKC) (DF), 2014 WL 6807834, at *8 (S.D.N.Y. Dec. 3, 2014), such that a plaintiff need only show that he or she was treated "less well [by the defendant] than other similarly situated employees, at least to some degree for discriminatory reasons," *id.* (citation omitted); *accord Philip v. Gtech Corp.*, No. 14cv9261 (PAE), 2016 WL 3959729, at *10 (S.D.N.Y. July 20, 2016) (explaining that the

NYCHRL allows for a "simplified" discrimination inquiry).  Even under the broad reach of the NYCHRL, however, a plaintiff is still required to plead factual allegations capable of raising an inference that the defendant engaged in a discriminatory act.  *See Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302, 308 (S.D.N.Y. 2015) ("Generally, when courts permit cases to proceed against individuals under the NYCHRL, it is because they participate in the conduct giving rise to a discrimination claim." (internal quotation marks and citation omitted)); *Villar*, 135 F. Supp. 3d at 143 ("Actual participation in conduct giving rise to a discrimination claim is required to support liability under both the NYSHRL and NYCHRL."); *Mitra v. State Bank of India*, No. 03cv6331 (DAB), 2005 WL 2143144, at *3 (S.D.N.Y. Sept. 6, 2005) ("[T]he prerequisite for individual liability under the NYCHRL is identical to that of § 296(6) of the State Human Rights Law, *i.e.*, the defendant at issue must have actually engaged in a discriminatory act." (internal quotation marks and citations omitted)).

Like the NYSHRL, the NYCHRL also allows for aider-and-abettor claims against individuals who did not serve as the plaintiff's direct employer.  *See* N.Y.C. Admin. Code § 8-107(1)(6) ("It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so.").  As, in this regard, the statutory language of the NYSHRL and the NYCHRL is virtually identical, the same substantive standards apply to aider-and-abettor claims brought under each law.  *See Davis-Bell*, 851 F. Supp. 2d at 687-88.

Once again, this Court notes that Plaintiff has not alleged that Villamarin personally engaged in any discriminatory act, of any kind, or that he took any action to aid and abet the alleged sex or disability discrimination to which Plaintiff claims she was subjected by the Donado Firm.  Consequently, regardless of whether Plaintiff has invoked the NYSHRL or the

broader NYCHRL, her Complaint cannot be said to contain "well-pleaded" allegations capable of supporting her discrimination claims against Villamarin.  In short, this Court has no basis for recommending that Plaintiff be awarded damages against Villamarin on any of those claims.

### B.   Plaintiff's Contract Claim

Plaintiff's seventh and final pleaded claim, which she purports to bring against all Defendants, is for breach of contract.  (*See* Compl. (Seventh Cause of Action).)  Plaintiff has not alleged, however, that she had a written employment contract.  Thus, she appears to base this claim entirely on the reasoning of *Weider v. Skala*, 80 N.Y.2d 628 (1992), in which the New York Court of Appeals found that a discharged associate attorney had stated an implied contract claim against his former law firm.  In that case, the plaintiff claimed that the firm had first threatened to fire him if he reported the professional misconduct of another associate, and had then proceeded to fire him when he insisted that the firm itself make the report.  *Id.* at 632.  The court reasoned:

> Defendants, a firm of lawyers, hired plaintiff to practice law and this objective was the only basis for the employment relationship. Intrinsic to this relationship, of course, was the unstated but essential compact that in conducting the firm's legal practice both plaintiff and the firm would do so in compliance with the prevailing rules of conduct and ethical standards of the profession. Insisting that as an associate in their employ plaintiff must act unethically and in violation of one of the primary professional rules amounted to nothing less than a frustration of the only legitimate purpose of the employment relationship.

*Id.* at 637-38.  Although framed in contract terms, a *Wieder* claim premised on an attorney's discharge may also be analyzed under the familiar framework of retaliatory termination.  *See Joffe v. King & Spalding LLP*, No. 17cv3392 (VEC), 2018 WL 2768645, at *8 (S.D.N.Y. June 8, 2018) (holding that an associate at a law firm "establishes a *prima facie* case under *Wieder* by demonstrating that he reported, attempted to report, or threatened to report suspected unethical

behavior and that he suffered an adverse employment action under circumstances giving rise to an inference of retaliation").

Here, separate and apart from her allegations regarding her maternity leave and cancer diagnosis, Plaintiff alleges in her Complaint that, in December 2013 (approximately a year before her employment was terminated), she sent both Donado and Villamarin an internet link to an article about a lawsuit that had been filed against the Donado Firm and American Hope Group.  (*See supra*, at n.3; Compl. ¶ 18.)  According to Plaintiff, she also asked Donado about the lawsuit and other complaints that had been made against the firm, and Donado "told her not to worry."  (Compl. ¶ 18.)  In addition, Plaintiff alleges that, in the summer of 2014 (still several months before her termination in late November of that year), she went to a staff meeting at which she raised "potential ethical concerns" about the Donado Firm's practices (*id.* ¶ 30), but her concerns were not addressed, and, after the meeting, she was assigned less work (*id.* ¶¶ 30, 31).

Although exceedingly thin, these portions of Plaintiff's Complaint at least hint at the possibility that Plaintiff may have a *Wieder* claim against the Donado Firm.  The allegations, however, are wholly insufficient to support such a claim against Villamarin, as the foundation of *Wieder* is the essential compact between an associate attorney and *the law firm* that has hired that associate to practice law.  Plaintiff has not alleged that she entered into any contract, either express or implied, with Villamarin.  She has not even alleged that Villamarin was in any way part of the Donato Firm, let alone that he had the authority to affect the conditions of her employment or to terminate that employment, or that he personally took any action in retaliation for the "ethical concerns" she raised about the firm.  Accordingly, even affording Plaintiff the

21

benefit of every reasonable inference, nothing in the Complaint can support an award of damages against Villamarin on a *Wieder* claim.

## III. PLAINTIFF'S CLAIMS AGAINST VILLAMARIN SHOULD BE DISMISSED *SUA SPONTE*, WITHOUT LEAVE TO AMEND.

In light of the above, Plaintiff has not demonstrated that she is entitled to recover against Villamarin on any of her pleaded claims, and, accordingly, I recommend that no damages be awarded to Plaintiff on this inquest. *See Centra Developers*, 2018 WL 1445574, at *2; *see also Continental Indus. Grp., Inc. v. Altunkilic*, No. 14cv790 (AT) (JLC), 2017 WL 2895933, at *15 (S.D.N.Y. July 7, 2017) (denying request for damages and declaratory relief where none of the claims were cognizable), *report and recommendation adopted by* 2018 WL 1508566 (Mar. 27, 2018). Rather, given the patent defects in Plaintiff's pleading, I recommend the *sua sponte* dismissal of her claims against Villamarin.

The Second Circuit has held that a *pro se* complaint should not be dismissed without first affording the plaintiff leave to amend. *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009). Plaintiff, however, while proceeding *pro se* in this action, is herself an attorney, and, in fact, describes herself in the Complaint as an experienced litigator. (*See* Compl. ¶ 15 (alleging that Plaintiff "made court appearances on behalf of the firm, attended mediations, advised clients, and drafted pleadings," and that "[a]s she was the only attorney at the firm who was admitted to practice in New Jersey, she was responsible for its entire caseload in that state in addition to the cases she managed in New York").) As such, and as noted above (*see* Discussion *supra*, at Section I(A)), Plaintiff's pleading is not entitled to the same liberal construction as that of a *pro se* litigant who is not an attorney, *see Cohen*, 2017 WL 2455132, at *3, and, in determining whether she should be granted leave to amend her defective claims against Villamarin, the Court need not afford Plaintiff the "special solicitude" that non-attorney litigants

receive, *id.* at *3-4; *see also Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453, 463 (S.D.N.Y. 2004) (denying leave to amend where *pro se* plaintiff, as an attorney, "ha[d] demonstrated he [was] capable of drafting a detailed pleading").

In this instance, given the extraordinary paucity of Plaintiff's allegations with respect to Villamarin – including the complete lack of allegations that Villamarin was an owner or employee of the Donado Firm, or that he played any role whatsoever in setting the terms and conditions of Plaintiff's employment, in determining that she should be fired, or in aiding and abetting any discrimination against her – the defects of the Complaint are too substantial to be readily cured.  Just as the Court dismissed Plaintiff's claims against ALC, without leave to amend, for failure to plead any allegations that plausibly suggested any wrongdoing on ALC's part (Dkt. 28), so too should Plaintiff's claims against Villamarin be dismissed at this point.

This Court notes, however, that – unlike her claims against Villamarin – at least certain of Plaintiff's claims against Donado and the Donado Firm may be sufficient to withstand scrutiny.[10]  While Plaintiff has not alleged that the Donado Firm had at least 15 employees, as necessary to bring it within the scope of Title VII, *see Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006) (holding that "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief"); *Torres v. Cortland ENT, P.C.*, No. 5:14-CV-1082, 2017 WL 2623893, at *2 (E.D.N.Y. June 16, 2017) (granting motion to dismiss for failure to allege facts regarding the number of individuals employed), she may be able to amend her Complaint to add that allegation.  In any event, her NYSHRL and NYCHRL claims, as discussed above, would not require the same predicate.  Moreover, with respect to Donado and the Donado Firm,

---

[10] Like Villamarin, the only other defendant named by Plaintiff in this case, Martinez, is not alleged to have taken any action against Plaintiff.  (*See generally* Compl.)

Plaintiff has alleged that she was hired by the firm (Compl. ¶ 15); that she was "successful in her role" and even received a raise because the firm was "pleased with her performance" (*id.* ¶ 16); that, at some point, another employee was terminated for taking maternity leave (*id.* ¶ 22); that, after Donado ignored her requests to discuss the firm's maternity leave policy, Plaintiff was informed that the firm was not going to pay for any maternity leave (*id.* ¶¶ 24, 25); that a male associate was hired while Plaintiff was on maternity leave (*id.* ¶ 27); that, when Plaintiff returned from leave, she was treated differently than she had been before, including by being "forced to work out of a small cubicle" and by having her "opinions and directions" ignored (*id.* ¶¶ 28, 29); and that, approximately one month after Plaintiff advised Donado that she had been diagnosed with breast cancer and had begun treatment, Donado terminated her employment (*id.* ¶¶ 32, 33, 40).  From these allegations, a reasonable inference could be drawn that Donado and the Donado Firm discriminated against Plaintiff in the terms and conditions of her employment because of her pregnancy, and discharged her because of her disability or perceived disability.  *See Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) ("Examples of . . . a [materially adverse] change [in working conditions] include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.").

        As neither Donado nor the Donado Firm has ever appeared in this case despite the Docket's reflecting that they were purportedly served with process, I further recommend that Plaintiff be directed to take appropriate steps to secure an entry of default against them under Rule 55(a) of the Federal Rules of Civil Procedure, and then to move for a default judgment

against them under Rule 55(b)(2), should Plaintiff still wish to pursue her claims against those defendants.

## **CONCLUSION**

Based on the foregoing, I respectfully recommend that Plaintiff be awarded no damages on her claims against defendant Villamarin, and that the Court dismiss those claims, without leave to replead.  I also recommend that Plaintiff be directed to seek an entry of default and default judgment against defendants Donado and the Donado Firm, should she wish to proceed against them, as they appear to be the only defendants as to which Plaintiff may have stated viable claims.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lorna G. Schofield, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Schofield.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993);

*Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58

(2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
     June 19, 2019

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies To:

Hon. Lorna G. Schofield, U.S.D.J.

Plaintiff (via ECF)

Mr. Mauricio Villamarin
27-00 Queens Plaza South
Of. 205
Long Island City, NY 11101

26